J-A06014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ASHLEY DEVELOPMENT CORPORATION | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PPL ELECTRIC UTILITY CORPORATION F/K/A PENNSYLVANIA POWER & LIGHT CO. | |
| Appellee | No. 1416 EDA 2014 |

Appeal from the Judgment Entered April 14, 2014
In the Court of Common Pleas of Northampton County
Civil Division at No(s): C0048-CV-2010-780

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED MARCH 27, 2015**

Appellant Ashley Development Corporation ("Ashley") appeals from the judgment entered in favor of Appellee PPL Electric Utilities Corporation ("PPL") and against Ashley.  We affirm.

The trial court set forth the following facts:

> On October 28, 2005, [Ashley] entered into an agreement of sale ("the 2005 Agreement") with [PPL] to purchase an approximately 164-acre parcel of land in Bethlehem Township, Northampton County, Pennsylvania.  On December 24, 2007, [Ashley] entered into an agreement (the "Sewage Capacity Agreement") with, inter alia, the City of Bethlehem (the "City") for confirmed access to sewage capacity for future development on the property. As part of the Sewage Capacity Agreement, [Ashley] was required to make three installment payments to the City in a total sum of $813,700.00. The first installment payment of $325,480.00 was due on or before February 29, 2008; the second installment payment of $325,480.00 was due on or before December 31, 2008; and the third and final

installment payment of $162,740.00 was due on or before December 31, 2009. [Ashley] executed a promissory note in favor of the City on February 25, 2008 (the "Promissory Note"), by which [Ashley] promised to make the aforementioned installment payments. [Ashley] and the City extended the payment dates set forth in the Promissory Note multiple times. Moreover, also on February 25, 2008, [Ashley] and [PPL] entered into an agreement (the "Assignment and Assumption Agreement") by which [PPL] agreed to assume [Ashley's] obligations to make the installment payments to the City pursuant to the terms of the Sewage Capacity Agreement.

Due to a downturn in the real estate market, [Ashley] had difficulty closing on the property at the sale price set forth in the 2005 Agreement. Consequently, on October 15, 2008, [Ashley] and [PPL] entered into an "Amended and Restated Agreement for the Sale and Purchase of Real Estate" ("the 2008 Agreement"). The 2008 Agreement reduced the purchase price of the property and set a closing date of on or before June 30, 2009. The 2008 Agreement also required [Ashley] to make the second $325,480.00 payment to the City, pursuant to the Sewage Capacity Agreement, due on December 31, 2008. Additionally, in the 2008 Agreement, the parties "agree[d] that times contained in this Agreement shall be of the essence."

In 2009, [PPL] learned that [Ashley] had failed to make the second sewage capacity payment to the City, which had been due on December 31, 2008. Despite [Ashley's] failure to perform its obligations pursuant to the 2008 Agreement, [PPL] chose to provide [Ashley] with a last-chance opportunity to close on the property, and, accordingly, on July 17, 2009, the parties entered into an addendum to the 2008 Agreement ("the July 2009 Addendum"), which extended the closing date to December 31, 2009. In consideration of [PPL] again extending the closing date, [Ashley] agreed

to make the payment to the City of Bethlehem in the amount of Three Hundred Twenty-Five Thousand Four Hundred Eighty and 00/100 ($325,480.00) Dollars on or before July 31, 2009, and agrees to make the final payment to the City of Bethlehem in

- 2 -

the amount of One Hundred Sixty-Two Thousand Seven Hundred Forty ($162,740.00) Dollars on or before October 31, 2009. Any extensions of the payment dates by the City of Bethlehem shall not in any manner change [Ashley's] obligations pursuant to this paragraph.

Further, [Ashley] agreed that, if it wanted to extend the closing date beyond December 31, 2009, it would be required to pay [PPL] an extension fee of $1,000,000.00 on or before that date.

On July 30, 2009, [Ashley] delivered a check to the City in the amount of $325,480.00. However, [Ashley] made arrangements with the City to hold the check until given word by [Ashley] to cash or deposit it. No such word was ever given to the City by [Ashley], and the check was not cashed or deposited by the City.

In December 2009, [Ashley] approached [PPL] about extending the closing date called for by the July 2009 Addendum, but [PPL] rejected an extension and confirmed, via email, that [Ashley] would be required to perform its obligations under the July 2009 Addendum or would be in breach thereof. [Ashley] did not close on the property nor did [Ashley] pay the $1,000,000.00 extension fee prior to December 31, 2009. The instant suit and counterclaim followed.

Trial Court Opinion, 4/4/2014, at 4-7 (internal citations to the record omitted).

On January 26, 2010, Ashley filed a complaint seeking damages for breach of contract, misrepresentation, and promissory estoppel/unjust enrichment. It also sought declaratory relief, specific performance, and injunctive relief. On March 1, 2010, PPL filed an answer, new matter, and counterclaim. The counterclaim sought damages for breach of contract and abuse of process. PPL withdrew the abuse of process claim before trial.

On March 9, 2010, after a two-day hearing, the trial court denied Ashley's request for a preliminary injunction.

On January 17, 2013, the trial court issued an order bifurcating the trial, with the issue of liability to be presented to a jury prior to the issue of damages. On January 22, 2013, a jury trial commenced. Following Ashley's case-in-chief, the trial court granted PPL's motion for a compulsory nonsuit for the misrepresentation claim.[1] N.T., 1/19/2013, at 7. On January 30, 2013, the jury returned a verdict in favor of PPL and against Ashley on the breach of contract claims and the trial court entered a verdict in favor of PPL and against Ashely on Ashley's claims for declaratory relief, specific performance, and injunctive relief. N.T., 1/30/2013, at 122-25. On March 27, 2013, the parties entered a written stipulation, and the court entered an agreed upon order molding the verdict and entering an award in favor of PPL in the amount of $203,500.00.

On April 8, 2013, Ashley filed a post-trial motion seeking judgment notwithstanding the verdict or, in the alternative, a new trial.[2] The trial court held a hearing and, on April 4, 2014, it denied the motion. After Ashley filed a praecipe for judgment, the prothonotary entered judgment on April 14, 2014. On May 2, 2014, Ashley filed a timely notice of appeal. Both

---

[1] Ashley does not challenge the compulsory nonsuit for the misrepresentation claim on appeal.

[2] Ashley filed its brief in support of the motion on October 25, 2013.

Ashley and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.[3]

Ashley raises the following claims on appeal:

1. Was it reversible error for the trial court to rule and instruct the jury that as a matter of law that [sic] Ashley's tender of payment to the City of Bethlehem by a promissory note was not a "payment."

2. Was it reversible error for the trial court not ruling as a matter of law that PPL extended the December 31, 2009 deadline for Ashley to pay the $1,000,000.00 extension fee by virtue of a written communication between Richard Brooks on behalf of Ashley and Robert J. Farley on behalf of PPL?

Appellant's Brief at 2.

Ashley challenges the trial court's denial of its post-trial motions. When reviewing a trial court's decision whether to grant judgment notwithstanding the verdict, this Court "must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner." *Reott v. Asia Trend, Inc.*, 7 A.3d 830, 835 (Pa.Super.2010) (quoting *Campisi v. Acme Markets, Inc.*, 915 A.2d 117, 119 (Pa.Super.2006)). The Superior Court "will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the

---

[3] The trial court issued a 1925(a) statement incorporating its April 4, 2014 opinion.

case. Further, the standard of review for an appellate court is the same as that for a trial court." ***Id.***

The Superior Court's "standard of review from an order denying a motion for a new trial is whether the trial court committed an error of law, which controlled the outcome of the case, or committed an abuse of discretion." ***Mirabel v. Morales***, 57 A.3d 144, 150 (Pa.Super. 2012). An abuse of discretion occurs where the trial court "rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." ***Id.*** (quoting ***Rettger v. UPMC Shadyside***, 991 A.2d 915, 924 (Pa.Super.2010)).

Ashley first challenges the court's jury instruction that the promissory note did not constitute payment. Appellant's Brief at 2. The argument section of Ashley's brief discusses the jury instructions regarding both the promissory note and the check Ashley provided to the City. Appellant's Brief at 21-43. Ashley did not object to the jury instruction regarding the check at the time of trial and, therefore, waived this argument. N.T., 1/29/2013, at 1-17; ***see McManamon v. Washko***, 9060 A.2d 1259, 1283 (Pa.Super.2006) (finding challenge to jury instruction waived where party did not object at trial). Ashley also waived this issue because the question presented section of its brief does not mention the check provided to the City. ***See Commonwealth v. Sepulvida***, 55 A.3d 1108, 1133 (Pa.2012) (issue waived when not raised in statement of questions presented).

Regarding the promissory note, the trial court found the following:

In its second issue, [Ashley] asserts that the [c]ourt erred by holding that [Ashley's] Promissory Note and the check tendered to the City on July 30, 2009, did not constitute "payment" pursuant to the terms of the July 2009 Addendum. In its closing charge, the Court instructed the jury that "the term payment as used in the July 17, 2009 addendum means cash, certified check, or an uncertified check collectable by the City of Bethlehem, but not a promissory note."

> [T]he rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation. Such intent is to be inferred from the written provisions of the contract.
>
> When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, which will be given its commonly accepted and plain meaning.

*Miller v. Poole*, 45 A.3d 1143, 1146 (Pa.Super.2012) (citations omitted) (internal quotation marks omitted).

[Ashley] argues that its Promissory Note was a negotiable instrument and thus constituted payment, pursuant to the July 2009 Addendum. "Payment is defined as the [p]erformance of an obligation, [usually] by the delivery of money.'" *Romaine v. W.C.A.B*. (Bryn Mawr Chateau Nursing Home), 901 A.2d 477, 482 (Pa.2006) (quoting BLACK'S LAW DICTIONARY 1150 (7th ed. 1999)). In the case of *In re De Roy's Estate*, 157 A. 800, 801 (Pa.1931), the decedent, a partner in a law firm, issued promissory notes to the firm, which were endorsed and given to a bank. After his death, the surviving partners continued as a new firm and issued new notes to the bank for the amount due on the prior notes. *Id.* The bank retained the old notes as security. *Id.* When the bank attempted to collect from the decedent's estate, the estate argued that the new notes constituted payment of the prior ones. *Id.* The Supreme Court disagreed with the estate and held that "[p]ayment in commercial paper constitutes only conditional payment, and, since conditional payment does not discharge the original

indebtedness, it does not discharge the surety for such indebtedness." *Id.*

[Ashley] argues that the factual scenario in the case of *In re DeRoys Estate*, which the [c]ourt relied upon in making its ruling at trial, is distinguishable from that of the instant case. Initially, the [c]ourt notes that it never held that the Supreme Court's decision in the case of *In re DeRoy's Estate* sets forth a blanket rule that a promissory note can never constitute payment. The [c]ourt actually agrees with [Ashley] that context is critically important in ascertaining the meaning of "payment" here at issue. Thus, the definition of "payment" is not to be determined in a vacuum or by simply importing the definition of "negotiable instrument" from Article 3 of the Uniform Commercial Code, 13 Pa.C.S.A. § 3104(a), as [Ashley] seeks to do. Rather, the meaning of the term "payment" as used in the July 2009 Addendum must be ascertained by looking to the parties' intentions as expressed in the language of the addendum. *See Miller*, 45 A.2d at 1146.

It is clear that, by insisting that [Ashley] agree to the terms of the July 2009 Addendum, [PPL] sought to prevent [Ashley] and the City from extending the Sewage Capacity Agreement payment dates, as had previously occurred multiple times. It cannot be emphasized enough that a promissory note is a "promise to pay money." *Lebanon Bank v. Mangan*, 28 Pa. 452, 455 (1857). . . . Thus, "[a] promissory note is not money, but only an engagement to pay money at a future time, which perhaps may never be complied with." *Leighty v. The President, Managers, and Co. of the Susquehanna and Watefford Tpk. Co*., 14 Serg. & Rawle 434, 435 (Pa.1826). Here, treating the Promissory Note as payment would defeat the very purpose of the July 2009 Addendum—to ensure that payment was made on the dates specified rather than on some uncertain future date agreed to by [Ashley] and the City but without [PPL's] knowledge or consent. In that regard, the fact that [Ashley] executed the Promissory Note more than one year before it executed the July 2009 Addendum only operates to confirm that the parties did not intend that the Promissory Note could satisfy [Ashley's] payment obligations pursuant to the addendum. Finally, the Court notes that [Ashley's] obligation, pursuant

to the July 2009 Addendum, was to make "payment" to the City, not to deliver to the City a negotiable instrument promising to pay the sum due. Thus, [Ashley's] reference to the definition of "negotiable instrument" in Article 3 of the Uniform Commercial Code has little, if any, relevance to the definition of "payment" in this case. As in the case of **In re DeRoy's Estate**, the factual circumstances surrounding the execution of the July 2009 Addendum demonstrates that the parties did not intend for a promissory note to be "payment."

Additionally, the [c]ourt would be remiss if it did not point out that the City's Solicitor, John F. Spirk, Jr., Esquire, who testified for [Ashley], stated that he did not consider the Promissory Note to be payment for [Ashley's] obligations pursuant to the Sewage Capacity Agreement. To the contrary, Attorney Spirk testified that, despite [Ashley's] tendering of the Promissory Note, [Ashley] "still owed money" because the City "wanted the money, not the paper," i.e., the Promissory Note. (N.T., 1/23/2013, at 62:13-14.)

N.T., 1/30/2013, at 85:24-86:25 (emphasis and internal footnotes omitted).

In support of its argument that the trial court erred when it instructed the jury that, as a matter of law, Ashley's tender of a promissory note to the City of Bethlehem was not a "payment," Ashley relies on out-of-state cases finding a promissory note constitutes payment. These cases, however, were fact-specific and focused on the parties' intent. **See Boozer v. Chandler**, 509 So.2d 1293 (Fla. Dist. App. 4th 1987) (noting payor sued on contract and notes and finding intent of parties was clear and, if default occurred, seller would retain cash deposited and notes would be credited against the sums paid); **Cala v. Gerami**, 484 N.E.2d 1199 (Ill. App. 1985) (noting "[g]enerally a promissory note may operate as a payment if the parties so agree," finding "it appears that the promissory note was given and accepted

as a payment due under the installment contract" and concluding "promissory note is a payment within the terms of paragraph 12 of the installment agreement").[4]

The trial court acted within its discretion in instructing the jury that the promissory note was not a payment. In 2008, Ashley entered an agreement with the City and provided the City with a promissory note, promising to pay its obligations in three installments. It then assigned the obligations under the agreement with the City to PPL, who made the first payment thereunder. PPL and Ashley entered into addendums to their agreement for the sale of land, pursuant to which Ashley agreed to make the final two installments. Because these addendums were entered into after Ashley provided the promissory note to the City, the parties could not have intended the promissory note to constitute payment. This is further evidenced by the following language of the July 2009 addendum: "Any extensions of the payment dates by the City of Bethlehem shall not in any manner change [Ashely's] obligations pursuant to this paragraph." We agree with the trial court that, under the circumstances of this case, the promissory note constituted a promise to pay, not actual payment.

_____

[4] Ashley also relies on cases which found that submitting a check suspended the payment obligation. Appellant's Brief at 25-35. As noted above, Ashley waived its argument challenging the jury instruction regarding the check.

Ashley next challenges the trial court's denial of Ashley's request that it find, as a matter of law, that PPL extended the December 31, 2009 deadline for Ashley to pay the $1,000,000.00 extension fee. Appellant's Brief at 43. Ashley maintains it informed PPL on December 22, 2009 and December 29, 2009 that it had the $1,000,000.00 extension fee, but PPL extended the deadline until January 8, 2010. *Id.* at 43-44. Ashley bases this argument on the following email Ashley received from PPL on December 29, 2009:

> Richard,
>
> I planned to contact you this morning to let you know where it stands. Bottom line is that PPL will not enter into another extension, but we are willing to discuss the proposal after we enter the new year. Unless you would be able to keep the terms of the current contract, you will be in default of the current agreement. I have a commitment from Bernhard that we will not immediately call the Letter of Credit, but will need a written proposal by 1/8/2010 to present for consideration to PPL Electric Utilities executives.
>
> Call me if you want to discuss.
>
> Bob

Exhibit 25 to Defendant PPL Electric Utilities Corporation's Motion for Summary Judgment; N.T., 1/29/2013, at 167.

This claim lacks merit. The email does not extend the deadline for the $1,000,000.00 payment to January 8, 2010 and advises Ashley that it would be in default if unable to meet the requirements of the July Addendum. Further, the testimony regarding the telephone calls

surrounding the email differed, making it a factual issue for the jury. ***Compare. E.g.,*** N.T., 1/25/2013, 189-193 (testimony by Ashley's witness PPL informed Ashley it did not have to pay extension fee on or before December 31, 2009 and agreement was extended), ***with, e.g.,*** N.T., 1/29/2013, 168-69 (testimony by PPL's witness denying PPL granted extension).

Judgment affirmed.

Judge Ott joins in the memorandum.

Judge Panella did not participate in this decision.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2015